**BASIS YIELD ALPHA FUND (MASTER), Plaintiff,**

v.

**GOLDMAN SACHS GROUP, INC.,** Goldman Sachs & Co., Goldman Sachs International, & Goldman Sachs Jbwere Pty. Ltd., Defendants.

No. 10 CV 4537 (BSJ) (DCF).

United States District Court, S.D. New York.

July 21, 2011.

Eric Lewis Lewis, Bruce Ronald Grace, Baach Robinson & Lewis PLLC, Washington, DC, for Plaintiff.

Jonathan David Schiller, Alanna Cyreeta Rutherford, Bridget Elizabeth Brown, David R. Boyd, Robert Jeffrey Dwyer, Rosaline Yuen Chi Chan, Tanya S. Chutkan, Boies Schiller & Flexner LLP, Thomas Michael Ling, Simpson Thacher & Bartlett LLP, New York, NY, for Defendants.

### Memorandum & Order

BARBARA S. JONES, United States District Judge.

This is a securities action brought by Basis Yield Alpha Fund (Master) ("BYAFM") under Section 10(b) and Rule 10b–5 of the Securities and Exchange Act of 1934 against Goldman Sachs Group ("GSG"), Goldman Sachs & Co. ("GSC"), Goldman Sachs International ("GSI") and Goldman Sachs JP Were Pty. Ltd. ("GSJBW"). The complaint, filed June 9, 2010, alleges that Defendants made materially misleading statements and omissions in connection with the sale of securities from a collateralized debt obligation ("CDO") known as Timberwolf 2007–1 ("Timberwolf"). These misstatements and omissions, Plaintiff alleges, cost BYAFM more than $50 million and forced it into insolvency. Plaintiff brings claims for securities fraud and common law fraud.

On July 9, 2010, this Court directed the parties to address as a threshold issue the effect of the Supreme Court's recent decision in *Morrison v. National Australia Bank, Ltd.*, —— U.S. ——, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010). On August 4, 2010, Defendants GSG and GSC moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, Defendants' motion is granted.

### BACKGROUND [1]

Plaintiff BYAFM is a regulated Cayman Islands Mutual Fund and a limited liability company under the laws of the Cayman Islands. (Compl. ¶ 15.) Defendants are Goldman Sachs & Company ("GSC") and its "affiliated companies" GSI, GSG, and GSJBW. (Compl. ¶ 1.) Plaintiff alleges that GSG is a corporation organized and existing under the laws of Delaware, with executive offices in New York. Plaintiff alleges that GSC is a limited partnership registered as a United States broker-dealer based in New York, and GSI is a company "with offices in London and New

---

1. The following facts, drawn from Plaintiff's complaint, are accepted as true for the purposes of the motion to dismiss only. Further, the Court seeks only to summarize those allegations that are relevant to the present motion and does not attempt to set forth all of Plaintiff's allegations.

York." (Compl. ¶ 18, 19.) Finally, Plaintiff alleges that GSJBW is a corporation organized and existing under the laws of Australia, with offices in Australia and New York. (Compl. ¶ 20.)

In March 2007, Timberwolf I, Ltd., a company organized under the laws of the Cayman Islands, and Timberwolf I (Delaware) Corp., organized under the laws of Delaware, issued Timberwolf-1 2007, which was marketed as a $1 billion single-A structured product CDO. Plaintiff alleges that both Timberwolf entities were "investment vehicles created and managed by Goldman or by business entities with a close relationship to Goldman." (Compl. ¶¶ 54–58.) On or about March 27, 2007, "GSC acquired all of the securities of Timberwolf in its role as exclusive underwriter and Initial Purchaser of the deal." (Compl. ¶ 59.) Plaintiff alleges that GSC then began offering and aggressively marketing the securities in Timberwolf for sale, using GSI and GSJBW as its selling agents. (Compl. ¶ 60–61.)

Beginning in April 2007, Plaintiff alleges that GSC and its selling affiliates began pitching the Timberwolf securities to BYAFM for purchase. From April to June 2007, George Maltezos of GSJBW was in frequent communication with John Murphy of Basis Capital Fund Management ("BCFM"), BYAFM's investment advisor regarding Timberwolf and other CDOs. (Compl. ¶ 63.) Plaintiff does not specify where Maltezos worked, but alleges that he operated "in coordination with and/or under the direction of GSG and/or GSC in New York, with which he communicated by telephone and by email." (Compl. ¶ 64.) Throughout this period, Plaintiff alleges that Maltezos communicated information to BYAFM that he obtained from New York-based Goldman personnel. This information, Plaintiff alleges, included material misrepresenta-

tions about the value of the offered securities and omissions in failing to advise Plaintiff that it believed Timberwolf was a "shitty deal." (Compl. ¶ 68–70.) The Complaint also alleges that Maltezos provided misleading cash flow projections to BYAFM from April to June 2007 to induce it to purchase Timberwolf. These documents were allegedly prepared by personnel of GSG and GSC in New York and sent electronically to Maltezos so that he could provide them to BYAFM. (Compl. ¶¶ 118–23.)

On or about June 12, 2007, BCFM advised Maltezos that BYAFM would not invest in Timberwolf without more information and assurances from Defendants regarding pricing and market conditions. (Compl. ¶ 72.) Maltezos then set up a conference call on Wednesday, June 13, 2007 with two BCFM representatives, Maltezos of GSCJBW, and David Lehman, a New York-based Managing Director of GSC, to discuss these concerns. (Compl. ¶¶ 73–75.) (Compl. ¶ 77.) Plaintiff further alleges that on this conference call, David Lehman provided false information and made material omissions regarding Defendants' belief that the CDO market would remain price stable going forward and that Timberwolf was a "good entry point" for BCFM. (Compl. ¶¶ 87–95.)

On or about June 13, 2007 (the same day as the conference call), BYAFM agreed to purchase $50 million of AAA-rated securities and $50 million of AA-rated securities from Timberwolf 2007-1 at a discounted price totaling $80,820,000. Both purchases were structured as credit default swaps between BYAFM and GSI. (Compl. ¶¶ 138–39.) On June 18, 2007, BYAFM transferred $11,250,000 to GSI in New York City, New York. (Compl. ¶ 140.) The transactions were confirmed in two Long Form Confirmations (labeled the Second Revised Confirmations) and officially dated

June 21, 2007. The Second Revised Confirmations were sent to BYAFM on June 21, 2007 and were executed and returned by BYAFM on July 3, 2007. (Compl. ¶ 141–42.)

In the weeks after execution of the transaction, BYAFM received a series of margin calls from Goldman totaling more than $30 million; essentially, Plaintiff alleges, Goldman's valuation of the securities dropped more than $30 million in less than three weeks. (Compl. ¶¶ 146–51.) BYAFM paid Goldman $5,040,000 to satisfy the first margin call on July 5, 2007. However, it did not pay the subsequent margin calls of July 11, 12, 16, or 17, 2007. On July 24, 2007, Goldman notified BYAFM that these failures to pay constituted an event of default under the agreement and Goldman was exercising its rights to designate the date as the Early Termination Date for the deal. As a result, in August 2007, BYAFM went into provisional liquidation in the Cayman Islands. Subsequently, in December 2007, BYAFM went into official liquidation. In the summer of 2008, as part of the official liquidation process, the BYAFM estate paid Goldman approximately $40 million to satisfy Goldman's claims for margin principal and interest due, without prejudice to any claims BYAFM might have against Goldman related to the Timberwolf securities. (Compl. ¶¶ 147–58.)

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true .…" *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991) (citation omitted). The

Court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir.2009) (explaining that in deciding a motion to dismiss, a court "consider[s] the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor") (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations and internal quotation marks omitted). A plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted).

Defendants also move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. *Morrison* made clear that questions as what conduct § 10(b) reaches are merits questions, rather than issues of subject matter jurisdiction. *Morrison*, 130 S.Ct. at 2877. Therefore, this Court will consider this motion under the Rule 12(b)(6) standard.

█ Securities fraud claims are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other condi-

tions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). Although intent may be alleged generally, a plaintiff must still "allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995) (citations omitted).

## DISCUSSION

### 1. Plaintiff has failed to sufficiently allege a domestic transaction.

■ In *Morrison,* the Supreme Court held that Section 10(b) of the Exchange Act does not apply extraterritorially and instead applies only to domestic securities transactions. In so holding, the Supreme Court established a "transactional test" to determine whether a transaction could be subject to a Section 10(b) suit, examining "whether the purchase or sale is made in the United States, or involves a security listed on a domestic exchange." *Morrison,* 130 S.Ct. at 2886; *see also Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.,* 753 F.Supp.2d 166, 177 (S.D.N.Y.2010). The Supreme Court further made clear that it was repudiating the "conduct and effects" test previously applied by this Circuit, emphasizing that the Exchange Act focuses not on "where the deception took place" but where the transaction occurred. *Morrison,* 130 S.Ct. at 2884.

As *Morrison* dealt with a security traded on a foreign exchange, it was "largely silent regarding how lower courts should determine whether a purchase or sale is made in the United States." *S.E.C. v. Goldman Sachs & Co.,* 790 F.Supp.2d 147, 157-58, 2011 WL 2305988 at *8 (S.D.N.Y. June 10, 2011) (internal quotations omitted). Consequently, courts dealing with securities not traded on any exchange, like the CDO at issue here, have had to define *when* a purchase or sale occurs so that it can then determine *where* the transaction took place.

■ For the purposes of the Exchange Act, a "purchase" has been held to occur when the parties incurred "irrevocable liability" to complete the transaction. *Plumbers' Union,* 753 F.Supp.2d at 177 (surveying case law and examining the statutory language of the Exchange Act); *see also S.E.C. v. Goldman Sachs,* 790 F.Supp.2d at 157–58, 2011 WL 2305988, at *8 (same). Thus, to state a claim under Section 10(b), a plaintiff must allege that the parties incurred irrevocable liability to purchase or sell the security in the United States.

■ Here, the Complaint includes numerous instances of U.S.-based conduct that led up to the sale of the security, including most notably the alleged fraudulent statements of GSC's New York-based Managing Director David Lehman on the June 13, 2007 conference call that allegedly induced BYAFM to purchase Timberwolf. (Compl. ¶¶ 77, 87–89.) Under *Morrison*'s "transactional test," however, Plaintiff fails to allege that any purchase or sale occurred in the United States. Plaintiff only alleges that "On or about June 13, 2007, BYAFM agreed to purchase from Goldman [the Timberwolf securities]". (Compl. ¶ 138.) Plaintiff fails to provide sufficient facts that allow the Court to draw the reasonable inference that the purchase or sale was made in the United States. As a result, Plaintiff fails to state a claim that Defendants violated Section 10(b) and Rule 10b–5. These claims are dismissed without prejudice.

### 2. Leave to Replead

■ While Plaintiff does not explicitly seek leave to replead, it does proffer "additional allegations" in its opposition brief meant to focus on the "locus of the sale transaction itself" in light of the decision in

*Morrison.* (Pl. Br. at 5.) However, the Court cannot properly consider allegations contained in legal briefs or memoranda in deciding a motion to dismiss. *Fonte v. Bd. of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). This Court is also aware that since briefing was completed, recent district court opinions, such as those cited above, have addressed the issues relevant to this inquiry. For these reasons, Plaintiff is granted leave to file an amended complaint.

### 3. Supplemental Jurisdiction

 Plaintiff also pleads claims for "common law fraud" and fraudulent concealment. The Court construes these as state law claims. As there are no remaining federal claims, the Court declines to exercise supplemental jurisdiction. 28 U.S.C. § 1367. These claims are dismissed without prejudice.

### CONCLUSION

Accordingly, the Complaint is dismissed without prejudice with leave to file an amended complaint.[2] Failure to file an amended complaint within 30 days of the entry of this Order will result in the closing of the case.

**SO ORDERED.**

---

**2.** The non-moving Defendants, GSI and GSJBW, are subject to identical allegations in the Complaint; Plaintiff refers to Defendants collectively as "Goldman" throughout most of the allegations. There are no separate facts as plead that would alter this inquiry, and Plaintiff has had an opportunity to respond. Therefore, in the interest of judicial economy, the claims against GSI and GSJBW are dismissed sua sponte. *See Hollander v. Copacabana Nightclub,* 580 F.Supp.2d 335, 343 (S.D.N.Y.2008).